**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANTHONY L. VIOLA,

  Plaintiff

  v.

             Civil Action No. 21-01462 (CKK)

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

  Defendants

**MEMORANDUM OPINION**
(July 27, 2022)

Plaintiff Anthony Viola ("Plaintiff" or "Viola"), proceeding *pro se*, alleges the United

States Department of Justice ("Justice Department"), Department of Housing and Urban

Development ("HUD"), Stephen Dettlebach, Nicholas Padilla, Jr., and Mark S. Bennett

(collectively, "Defendants") violated the Privacy Act, 5 U.S.C. §§ 552 *et seq.*, when they

purportedly published a press release recognizing an award given to Mark Bennett for his work

in mortgage-fraud related cases, including one against Plaintiff.  Before the Court is Defendants'

[9] Motion to Dismiss for lack of jurisdiction and for failure to state a claim.  As a threshold

matter, the Court dismisses all claims as against the individual defendants because Privacy Act

actions can only be brought against institutional defendants.  *See Martinez v. Bureau of Prisons*,

444 F.3d 620, 624 (D.C. Cir. 2006).  The Court further dismisses Plaintiff's remaining claims for

failure to state a claim.  Accordingly, and upon consideration of the briefing,[1] the relevant legal

---

[1]  The Court's consideration has focused on:
- Plaintiff's Complaint, ECF No. 1 ("Compl.");
- Defendants' Motion to Dismiss and Memorandum in Support, ECF No. 9 ("Mot.");
- Plaintiff's Opposition to Government Motion to Dismiss or Transfer this Matter, ECF No. 13 ("Opp.");
- Defendants' Reply in Support of Motion to Dismiss, ECF No. 12 ("Repl.").

authorities, and the entire record, the Court **GRANTS** Defendant's [9] Motion to Dismiss and

Memorandum in Support and **DISMISSES** the [1] Complaint.

## I. BACKGROUND

On April 1, 2011, a jury in the Northern District of Ohio convicted Plaintiff on 35 of 36

counts arising from a mortgage-fraud scheme. *United States v. Viola*, 08-cr-506, 2011 WL

6749643, at *1 (N.D. Ohio Dec. 22, 2011).  Over four years later, on April 23, 2015, the

Department of Justice published a press release highlighting the work of Assistant United States

Attorney Mark Bennett of the U.S. Attorney's Office for the Northern District of Ohio for

prosecuting mortgage-fraud cases, including his work in securing a conviction against Plaintiff in

Ohio.  The press release contained just two sentences about Plaintiff: (1) "Viola, a real estate

company owner from Cleveland Heights, was sentenced to more than 12 years in prison" and (2)

"A jury convicted Viola… of multiple counts related to the fraudulent sale of 34 homes, resulting

in the loss of more than $3 million."  Mot. at 9 n.5.

Plaintiff claims that "Defendants made false statements in a press releases [sic],

concerning the Plaintiff, in violation of the Privacy Act, 5 U.S.C. §§ 552a(g)(1), 552(a)(4)(b)."

Compl. ¶ 9.  As there is only one press release in the record, the Court presumes Plaintiff refers

to the one quoted above.   Plaintiff attempts to backdoor into a Privacy Act claim a litany of

accusations in his complaint of improper behavior that have been rejected by a swath of other

courts.[2]  Recasting his failed theories of liability under the auspices of the Privacy Act, Plaintiff

---

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful
in the resolution of the Motion.
[2] *E.g.*, *U.S. Bank, N.A. v. Viola*, No. 1:16-cv-969, 2016 WL 7012303 (N.D. Ohio Dec. 1, 2016)
(dismissing Plaintiff's counterclaim alleging prosecutorial misconduct); *Viola v. Kasaris*, No.
2:16-cv-1036, 2017 WL 735588 (S.D. Ohio Mar. 27, 2017) (granting Kasaris's Motion to
Dismiss claims for prosecutorial misconduct); *Viola v. Bennett*, No. 1:17-cv-456, 2017 WL
11621551 (N.D. Ohio May 22, 2017) (dismissing a civil right action against AUSA Bennett);

insists that Defendants "improperly disseminated" private information (his public conviction),

"failed to verify" their records (how, unclear), and failed to correct a materially false press

release. *Id*. ⁋⁋ 40-59.  According to Plaintiff, the key reason why the April 23, 2015 press

release is misleading is because the Justice Department failed to inform the "public about the

acquittal at the second trial, or that the initial conviction was based on materially false testimony

that was subsequently recanted." *Id*. ⁋ 42.  For this alleged misfeasance, Plaintiff seeks monetary

and declaratory relief.

## II. LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has

subject matter jurisdiction.  *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir.

1984) ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it

exists.").  A court must accept as true all factual allegations contained in the complaint when

reviewing a motion to dismiss pursuant to Rule 12(b)(1).  *Banneker Ventures, LLC v. Graham*,

798 F.3d 1119, 1129 (D.C. Cir. 2015) ("As it must on motions to dismiss for failure to state a

claim, a district court considering a motion to dismiss for lack of subject matter jurisdiction

accepts the allegations of the complaint as true.").  "Where necessary to resolve a jurisdictional

challenge under Rule 12(b)(1), 'the court may consider the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus

---

*Viola v. Blair*, No. 1:17-cv-827 (N.D. Ohio Aug. 7, 2017) (dismissing a civil rights action
challenging restitution imposed in his criminal case); *Viola v. Ohio Att'y Gen.*, No. 20-cv-765,
2021 WL 510746 (N.D. Ohio Feb. 11, 2021) (dismissing claims that his federal conviction was
obtained by prosecutorial misconduct); *Viola v. Cuyahoga County Land Bank*, Case No. 1:21-cv-
1196, 2021 WL 5015486 at *8-9 (N.D. Ohio Oct. 28, 2021) (declaring his repeated filings as
"frivolous" and deeming Viola a vexatious litigator).

the court's resolution of disputed facts.'" *Id*. (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

### III. DISCUSSION

The Court agrees the [1] Complaint fails to state a claim for which the Court may grant relief. Plaintiff's Privacy Act claims are time barred under the applicable statute of limitations and, even were they not, the complaint as pled does not state a violation of the Privacy Act.

**A.  Statute of Limitations**

Under the Privacy Act, an "action to enforce any liability created by this section . . . may [only] be brought . . . within **two years** from the date on which the cause arises." 5 U.S.C. § 552a(g)(5) (emphasis added).  "A Privacy Act cause of action arises 'at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error.'"  *Conklin v. U.S. Bureau of Prisons*, 514 F. Supp. 2d 1, 4 (D.D.C. 2007) (quoting *Szymanski v. United States Parole Comm'n*, 870 F. Supp. 377, 378 (D.D.C. 1994)).  The Department of Justice released the press release in 2015, six years before the present case was filed, and well outside the period of limitations.

Plaintiff makes no representation regarding when, exactly, he learned of the press release.  Rather, Plaintiff states only that, while in jail, friends and family alerted Plaintiff's father of the press release in question who then reached out to Defendants Dettelbach and Bennett on Plaintiff's behalf.  Compl. ¶ 34.  Defendants note that Plaintiff's father passed away on May 15, 2019, and the present case was brought on May 27, 2021.[3]  Mot. at 9.  Therefore, Plaintiff must have learned of the press release prior to his father's death.  The Government's conclusion goes unrebutted, Plaintiff thereby conceded any opposition thereto.  *Hopkins v. Women's Div. Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).  Accordingly, the Court concludes that Plaintiff learned of this press release sometime prior to May 15, 2019, making the present action untimely.

---

[3] The Court takes judicial notice of the date on which Plaintiff's father, Anthony Viola, Sr., passed away—May 15, 2019—as a fact that cannot reasonably be doubted. *United States v. Philip Morris*, No. 99-cv-2496, 2004 WL 5255971, at *1 (D.D.C. Aug. 2, 2004) (citing Fed. R. Ev. 201(b)).  The Court may take judicial notice of such adjudicative facts without converting a motion to dismiss into one for summary judgment. *Herron v. Fannie Mae*, No. 10-cv-943, 2012 WL 13042852, at *1 (D.D.C. Mar. 28, 2012).

As a fallback, Plaintiff argues in opposition that the present case falls within the statute of limitations because in 2020, "both the FBI and Department Justice admitted making false statements about evidence in Plaintiff's federal case." Opp. at 2. Plaintiff does not point to any *particular* statement from that time, however. Rather, the only statement that Plaintiff characterizes as actionable under the Privacy Act is the 2015 press release. Even if Plaintiff could point to a particular statement, he may not amend his complaint in subsequent briefing. *Durand v. District of Columbia*, 38 F. Supp. 3d 119, 129 (D.D.C. 2014). Accordingly, the Court concludes that Plaintiff's Privacy Act claims are barred under the statute of limitations.

## B. Merits

Plaintiff's Privacy Act claims also fail on the merits. Plaintiff argues that the inclusion of his case number and case outcome is "misleading" because it does not include his subsequent acquittal at state trial. Compl. ¶¶ 8-9. That argument does not convince. As an initial matter, Plaintiff's state prosecution was brought by a *state* prosecutor in *state* court involving different statutes and different procedures. The Court would not presume the Department of Justice, in advance of a press release regarding a *federal* prosecution, to research state criminal records.

As to the law, the Privacy Act permits an agency to disseminate "routine" information as part of their general disclosure practices. 5 U.S.C. § 552a(b)(3). The agency in question defines "routine information" by publishing a notice in the Federal Register describing the categories of users and purposes of such use for the appropriate record system. 5 U.S.C. § 552a(e)(4)(D); *Raddack v. Dep't of Just.*, 402 F. Supp. 2d 99, 105 (D.D.C. 2005). The Justice Department describes routine use as "[i]nformation permitted to be released to the news media pursuant to 28 C.F.R. § 50…unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy." 42 Fed. Reg.

53,288 53,364 (Sept. 30, 1977).  Under 28 C.F.R. § 50.2, the Justice Department may make public certain information including "[t]he defendant's name, age, residence, employment… and other similar background information" and "the substance or text of the charge, such as complaint, indictment, or information."  28 C.F.R. §50.2(b)(i-ii).  The Department of Justice allows for publication of "incontrovertible, factual matter" and further prohibits "subjective observations."  28 C.F.R. §50.2(b)(iv).

The April 23, 2015 press release contains Plaintiff's name, occupation, residence, case name, and conviction—all factual pieces of information allowed under the Justice Department's notice on routine use exception of the Privacy Act.  The Plaintiff does not argue against the factual sufficiency of the press release, only that the press release violates the Privacy Act by failing to mention a subsequent state court acquittal.  Nowhere does the Act impose an affirmative requirement for agencies to place all permitted information in context, and Plaintiff does not cite any authority to that effect.  Even had he, although Plaintiff forcefully maintains his innocence, no court has come remotely close to exonerating him.  *See, e.g.*, *United States v. Viola*, 2012 WL 3044295, at *1 (N.D. Ohio 2012) (acquittal of charges in state court is not sufficient grounds to retry federal case); *United States v. Viola*, 2015 WL 7259783, at *3 (N.D. Ohio Nov. 17, 2015) ("an acquittal on state charges is equally insufficient to establish that he was actually innocent of the federal charges").  Furthermore, Plaintiff does not argue against Defendants' characterization of the press release as "routine use" and this Court, once again, treats unopposed arguments as conceded.  *Hopkins*, 284 F. Supp. 2d at 25.  As such, the [1] Complaint fails to state a claim under the Privacy Act.

### C. Exhaustion

Lastly, the Court dismisses Count III of Plaintiff's complaint for failure to exhaust administrative remedies. Privacy Act claims are subject to an administrative exhaustion requirement. *Sandoval v. Dep't of Just.*, 296 F. Supp. 3d 1, 13 (D.D.C. 2017).  Plaintiff here wrote a letter to HUD asking them to correct the press release when the press release merely mentioned HUD granting AUSA Mark Bennett an award.  The appropriate course of action would have been to write to the Department of Justice who issued the press release, which Plaintiff provides no evidence of doing.

### IV. CONCLUSION

For the foregoing reasons, the Defendant's [9] Motion to Dismiss is **GRANTED**.  An appropriate order accompanies this Memorandum Opinion.


Dated: July 27, 2022                                  _____/s/_____
                                                      COLLEEN KOLLAR-KOTELLY
                                                      United States District Judge